EDWARD HILLER *et al., Plaintiffs in Error,* v. WALTER RAY & COMPANY, *Defendants in Error.*

1. Where upon consideration of all the terms of a contract and its subject-matter and object, its manifest purpose is to give "the exclusive privilege" "for the purpose only of digging, mining and preparing for shipment and shipping phosphate rock," on described lands, of the specified "quantity and quality contained in said lands," in return for which a royalty of seventy-five cents per ton is to be paid, such contract is not one for a general or ordinary use and occupation of the lands, but the right given is special and precisely limited.

2. Where the lessors of land for the specific purpose of taking phosphate rock of a specified character and volume therefrom do not covenant that the rock actually exists in the land, and the lessees do not covenant to actually find the rock in the land, but the contract contemplates the existence of the rock and a search for it by the lessees, there is an implied obligation upon the lessees to make due and reasonable effort to find the rock in the land.

3.  What is due and reasonable effort to find rock of a specified quality and quantity in lands leased for the express purpose of taking such rock from the land, depends upon the fair and just requirements of the enterprise to be determined as a fact by the application of practical knowledge and experience.

4.  Where the purpose of a contract is the mining of phosphate rock of a specified character, a failure upon proper endeavor to find the rock is a good defense in an action for royalties in the absence of agreements to the contrary.

5.  Where a lease of land for mining purposes contemplates the existence of the rock to be mined, a provision for a minimum royalty in gross "whether the mining is carried on or not," relates to a failure to mine, not to a failure to find the required rock.

6.  In a lease of land for mining purposes the failure to find the specified rock and the character of the search made for it, being more within the knowledge of the lessees, are matters of defense in an action for royalties.

7.  Under section 1505 of the General Statutes, of 1906, a plaintiff in an action is incompetent to testify "in regard to any transaction or communication between such witness" and a member of the partnership of which the defendant is the "assignee" where the action is against the assignee.

This case was decided by Division A.

Writ of error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the court.

*Cooper & Cooper* and *Wm. Hocker,* for Plaintiffs in Error;

*H. L. Anderson* and *H. M. Hampton,* for Defendant in Error.

WHITFIELD, C. J.—On September 27, 1901, Walter Ray and Daniel A. Clark, partners as Walter Ray & Company, referred to as lessors, entered into a contract with Herbert A. Ford and Edward Hiller, partners as Ford & Hiller, referred to as lessees, wherein it was agreed "that for and in consideration of the covenants and agreements herein contained, and the agreement to pay rent or royalties hereinafter referred to, the said lessors do hereby grant and lease unto the lessees all those certain" described lands containing 11,900 acres more or less "for the purposes only of digging, mining and preparing for shipment and shipping phosphate rock, hereinafter described, as to quantity and quality contained in said lands, and the carrying on of the business of mining said phosphate rock, reserving the timber and turpentine privileges and the full right to use the said lands for said purposes, except as hereinafter stated. The term of this lease is for a period of ten years from date hereof," with stated provisions for a renewal.  *  *  *  The lessees hereby agree to pay to the lessors as royalty or rent for the exclusive privilege of mining said lands, which exclusive privilege is hereby granted, the sum of 75 cents per ton  *  *  *  for each ton of phosphate rock they may mine on said lands during the term of this lease, of the quality hereinafter designated; and they agree specially that the minimum amount of said rock to be mined each year shall not be less than six thousand six hundred and sixty-six (6666) tons for each year of the lease period, or to pay the lessors or their assigns the sum of five thousand dollars per year in installments as hereinafter set forth, whether the mining is carried on or not. And it is agreed in the event the lessees shall mine a less quantity than the minimum of 6666 tons during any year they may within the next succeeding year make up the deficit of the preceding year. The lessees having paid on the de-

livery of this contract the sum of fifteen thousand ($15,000.00) dollars as an advance on said royalty or rent, it is agreed that the lessees shall have the right to mine a sufficient quantity of rock to reimburse them for said advances before any other royalty or rent shall become due and payable. After the reimbursement of the said advances so made by the lessees on account of royalties or rent, the royalties on rock mined and shipped shall be paid as near to the time of shipment as car numbers and weights can be had. * * * Merchantable rock within the terms of this lease shall mean all rock containing seventy-six per cent. (76%) of bone phosphate of lime and not exceeding three percent (3%) of iron and alumina. * * * When a mine is opened on a deposit of rock of the quality herein required to be mined, and upon which said mining is begun, said deposit shall be completely mined out and exhausted before the lessees herein shall have the right to abandon the same or remove the plant therefrom. And the lessors hereby agree to erect and maintain a plant and carry on mining operations on each pocket of rock of the quality herein required to be mined which shall contain at least ten thousand (10,000) tons, unless such pocket can be mined and transported by dummy line to another plant. The lessees agree to mine all pockets of rock of the quality herein described containing three thousand (3000) tons that are within one-half mile of any plant. The lessees shall not be required to mine any deposit of rock where the matrix does not yield ten percent (10%) of rock required to be mined herein, and they shall mine to a depth below the water level where the water can be controlled by a six-inch pump. * * * The lessees shall have the right to possession of said lands for the purpose of carrying on mining operations with the right of ingress and egress and the right to construct railways and tramways

over the surface of the lands as they may desire for the purpose of mining and shipping phosphate rock and whatever appertains to the mining business." The contract also gave a lien to the lessors on "any phosphate plants, tools, implements, machinery, materials and property erected or used upon the premises, and upon all rock mined therefrom from the time said rock is taken from the ground until the royalty on the same has been paid," but such lien is not to abridge the right "to distrain for rent under the laws of the State of Florida, relating to landlord and tenant," and that in "default in the payment of rentals or any part thereof, at the time same may become due and payable, the lessors, at their option, may terminate this contract, and shall thereupon be entitled to re-enter by giving sixty (60) days prior written notice to lessees of their intention to so terminate the same, provided, the lessees shall have fifteen (15) days after notice by the lessors of such arrears to pay the same. * * * This lease is not assignable by the lessees without the consent in writing of the lessors * * * but either lessee may assign his or their interest herein to the other lessee." It is perhaps not necessary to state other provisions of the contract.

The lessees, Ford & Hiller, with the consent of the lessors, assigned the contract to the Dutton Phosphate Company, a copartnership composed of H. F. Dutton, C. W. Chase, W. G. Robinson and J. G. Nichols, and this partnership with the consent of the lessors assigned the contract to the Dutton Phosphate Company, a corporation. On August 3rd, 1907, Walter Ray & Company filed a declaration against the Dutton Phosphate Company, a corporation, and afterwards joined as a defendant Edward Hiller as surviving partner of the firm of Ford & Hiller, Ford having died, for the recovery of $5,000.00 for each of two years from September 27th, 1904, as

"minimum rent or royalty" under the contract. Judgment was obtained by the plaintiffs and the defendants took writ of error.

The declaration sets out the contract and alleges that the Dutton Phosphate Company, a corporation, entered upon said lands under the contract assigned to it about May 1st, 1903, "and accepted said lease, and thereby bound itself to perform the covenants thereof, in the manner and to the same extent as the said Ford & Hiller were bound to perform the same, and became liable to the plaintiffs for the payment of all sums of money due or to become due under said contract."

Where there is an express contract to pay rent or royalties in return for the use of lands leased, and the lease is assigned so as to create a privity of estate between the lessor and the assignee, the latter is liable because of the privity of estate for rents or royalties accruing after the assignment. The lessee is liable on his express contract, and may be joined with the assignee as defendants in an appropriate action to recover rents or royalties for which both are liable. See 24 Cyc., 1177, *et seq.*

Assuming for the purposes of this case that the litigation is between the proper parties the meaning and effect of the contract will be considered so as to determine the propriety of rulings upon the pleas. See Tiffany on Landlord and Tenant, 881; Sutliff v. Atwood, 15 Ohio St. 186, text 194.

Upon a consideration of all the terms of the contract and its subject matter and object, the manifest purpose of the contract was as stated therein to give "the exclusive privilege" "for the purposes only of digging, mining and preparing for shipment and shipping phosphate rock," of the specified "quantity and quality contained in said lands," in return for which a royalty of seventy-five

cents per ton was to be paid. The contract is not one for a general or ordinary use and occupation of the lands, but the right given is special and precisely limited.

The subject matter of the contract as expressed therein was phosphate rock of the specified "quantity and quality contained in said lands," the existence of the rock being thereby assumed. Upon this assumption $15,000.00, of the amount to become due in return for the stated rights granted in the lands, was paid in advance to be reimbursed "before any other royalty or rent shall become due and payable."

There is no covenant by the lessors that the required rock actually existed in the lands, but the contract clearly contemplated its existence and a search by the lessees to ascertain the location and extent of the specified deposits assumed to be in the lands. There is no covenant by the lessees to actually find the designated rock in the lands, but by necessary implication and intendment the obligation devolved upon the lessees to make due and reasonable effort to find upon or in the land, rock of the quantity and quality specified. If found, the lessees specially agreed that "the minimum amount of said rock to be mined each year shall not be less than six thousand six hundred and sixty-six (6666) tons for each year of the lease period, or to pay the lessors or their assigns the sum of five thousand dollars per year * * * , whether the mining is carried on or not." If upon due and reasonable effort being made the rock is not found, the purpose of the contract fails in whole or in part according as rock of the specified quantity and quality is not found. See Brick Co. v. Pond, 38 Ohio St. 65; Venedocia Oil & Gas Co. v. Robinson, 71 Ohio St. 302, 73 N. E. Rep. 222, 2 Ann. Cas. 444 and notes.

What is due and reasonable effort depends upon the

fair and just requirements of the enterprise to be determined as a fact by the application of practical knowledge and experience.

The purpose of the contract being the mining of phosphate rock of a specified character, a failure upon proper endeavor to find the rock as required would be a good defense to an action for royalties.

The alternative obligation to pay "five thousand dollars per year    *    *    *    *    whether the mining is carried on or not," is based upon the assumption that rock of the specified "quantity and quality (was) contained in said lands." The contingency sought to be provided against was the failure to mine, not the failure to find the rock to mine, for the contract assumed and contemplated the existence of the rock as its subject matter.

There was no maximum limit to the right as to the amount of rock that could be mined if found, and the minimum of 6666 tons per year was fixed to stimulate the mining operations so as to yield the stated average minimum in royalties. The only possession of the lands accorded to the lessees under the contract was the right to mine phosphate rock of a specified character, and of ingress and egress and other rights incidental to the mining and marketing enterprise. The contract does not require the lessors to point out or to discover to the lessees the rock to be mined, nor does it require the lessees to notify the lessors of the failure to find rock.

While the necessarily implied duty of the lessees to duly search for rock on the land continued till all the lands were properly examined, the purpose of the contract being the mining of rock, not merely the search for rock, royalties are to be paid only upon rock mined or that should have been mined because it was found or could have been found by due search. The minimum annual payments provided for depended upon the exist

ence of rock that could be found by due and reasonable effort. The absence of or the failure to find the specified rock and the character of the search made for it, being under the operations and circumstances contemplated by the contract more within the knowledge of the lessees, are matters of defense in an action for royalties. See Cook v. Andrews, 36 Ohio St. 174.

If some rock was mined, but after due and reasonable search no more rock is found than is required to reimburse in royalties the $15,000.00, advanced by the lessees, the lessors cannot recover, for the contract clearly contemplated the existence of sufficient rock the royalties upon which would reimburse the lessees for the $15,000.00 advanced. The contract also assumed and contemplated the existence of rock to be mined after the prepaid royalties had been reimbursed, and that at least 6666 tons would be found and mined each year during the contract period.

The contract provided for the re-entry of the lessors upon failure to make the agreed payment, and this was the express remedy of the lessors against laches of the lessees in making payment whether caused by failure to properly search for the required rock or otherwise.

This court sustained as a good defense a plea that there was not upon the land phosphate rock of the quality and in the quantities and locations mentioned in the contract and also two pleas that there was not upon the lands rock of the quality and in the quantities and locations mentioned in the contract and that defendants notified the plaintiffs thereof and of the surrender of the contract, and also a plea of payment. But the court sustained a demurrer to a plea that the defendants "diligently looked and prospected and examined for the phosphate rock of the quality and in the quantities and locations in said lease or contract and in said counts mentioned, and did

use and exercise reasonable and due diligence therein in so doing, but failed and were unable to find phosphate rock of the quality and in the quantities and locations in said lease or contract mentioned on or in said lands or any part thereof," coupled with an averment that the lessors did not point out, show or indicate to the lessees the required rock on said lands. This plea was not bad on demurrer in the view that the defendants are obligated only to make due and reasonable search for the required rock.

The court also sustained a demurrer to a plea that the lessees having paid $15,000.00 in advance to be reimbursed from royalties upon rock mined there was not sufficient rock of the quality and in the quantities and locations mentioned in the contract to reimburse defendants for the advance payment. If there was not on the lands sufficient rock of the specified character to reimburse in royalties the advance payment, the defendants are not liable for the claim here asserted and the demurrer to the plea should have been overruled.

This discussion indicates the proper issues for another trial.

Under Section 1505 of the General Statutes the plaintiff Ray was incompetent to testify "in regard to any transaction or communication between such witness" and a member of the partnership of which the defendant is the "assignee" in this action against such assignee.

The judgment is reversed and the cause remanded.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, P. J., and HOCKER and PARKHILL, J. J., concur in the opinion.

Petition for rehearing in this case denied.