J. C. WILLIAMS AND E. W. CLARK, *Plaintiffs in Error,* v. A. C. PHIEL, *Defendant in Error.*

1.  Where a contract of lease for digging, mining and shipping not less than 10,000 tons of phosphate each year from certain described land, for which the lessee was to pay the lessor $1.25 per ton as royalty, and where it is plain from the contract that the parties assumed there was sufficient phosphate to enable the lessee to comply with the contract it is not essential to a cause of action that the declaration in a suit by the lessor for the royalties on 10,000 tons so agreed to be paid by the lessee, shall allege the existence of merchantable phosphate in the land to the extent of ten thousand tons, or that said quantity had been shipped.

2.  Pleas which are not sworn to may be ignored.

3.  Where a final judgment is entered by the circuit judge there is a presumption, in the absence from the record of anything to show the contrary, that said judge acted upon sufficient proof.

This case was decided by Division B.

Writ of error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Sparkman & Carter* and *H. S. Hampton,* for Plaintiffs in Error;

*Glen & Himes,* and *C. C. Whitaker* for Defendant in Error.

HOCKER, J.—Defendant in error, Phiel, brought a suit in the circuit court of Hillsborough county against the plaintiffs in error, J. C. Williams and E. W. Clark, in June, 1909. The declaration is as follows:

"A. C. Phiel,
      Plaintiff,
   vs.
J. C. Williams and E. W. Clark,
               Defendants.

Hillsborough County, to-wit:

The plaintiff, A. C. Phiel by C. C. Whitaker and Glen & Himes, his attorneys, sues the defendants J. C. Williams and E. W. Clark for this to-wit: that heretofore, to-wit, on the 5th day of November, 1907, the plaintiff and the defendants made and entered into a contract in writing, under seal, in the words and figures following, to-wit:

THIS INDENTURE, Made on the 5th day of November, A. D. 1907, by and between A. C. Phiel of St. Petersburg,

Hillsborough County, State of Florida, party of the first part, and J. C. Williams and E. W. Clark of the same city, State and county of the second part:

WITNESSETH, That the said party of the first part, for himself, his heirs, executors, administrators and assigns, in consideration of the sum of one dollar to him in hand paid, the receipt of which is hereby acknowledged, and in further consideration of the royalties, covenants and agreements hereinafter mentioned on the part of the second parties to be kept and performed, do hereby give and grant unto the said second parties their heirs, executors, administrators or assigns, the exclusive right of phosphate mining, or mining for phosphate on the lands hereinafter described, under the terms, conditions, stipulations and agreements hereinafter contained, the land upon which the second parties are given the privilege to enter and mine being more particularly described as follows, to-wit:

All the land lying between the rock road and the right of way of the LOG ROAD of which is known as the West Coffee Lumber Company's Log Road in the Northwest quarter (NW 1/4) of Section Twenty (20), Township Nineteen (19) South, Range Twenty (20) East; also Blocks Number Sixty-two (62), Sixty-three (63), Sixty-four (64) and Sixty-five (65), with the exception of a lot in the Southwest Corner of Block 65, which lot has been deeded as a colored cemetery, said Blocks being a part of the town of Inverness, and to the North and adjoining the above described quarter section, 64 and 65 adjoining the same.

This indenture being for the purpose of permitting the parties of the second part to search for Phosphate Rock, and Phosphate deposits thereon, and to erect buildings, and conduct mining operations upon said property, to place machinery, railroads or railroad tracks, tram roads,

or to do any other act or thing that may be necessary in conducting such mining operations, and the marketing of the same.

The parties of the second part agree and bind themselves that they, their heirs, executors, administrators, or assigns shall pay, or cause to be paid to the party of the first part, his heirs, executors, administrators or assigns, the sum of one dollar and twenty-five cents ($1.25) per ton as royalty for each and every ton of phosphate rock that may be mined and shipped from said property.

The parties of the second part agree to equip the property mentioned herein with the necessary buildings, machinery, roads, etc. to handle the product with facility and rapidly, placing a sufficient number of mills or plants on the land for that purpose and in such places as will accomplish that result in the shortest possible time, and parties of the second part agree that they will dig, mine and ship from the first plant so erected not less than ten thousand tons of phosphate each year. The operations to commence ninety days from the date of this indenture, and to continue during the life of this indenture, except as otherwise stipulated and agreed herein; unless prevented by something beyond the control of the parties of the second part.

In the event the second parties shall fail to mine and ship the amount of phosphate as stipulated above from said lands for any one year on account of the low price of phosphate, then any excess which said second parties may have paid royalties on over said minimum tonnage of preceding years, shall be allowed as a credit on the royalties to accrue during the succeeding year, or during the no mining period.

Parties of the second part are to make no shipments, or permit any shipments to be made of any product from the land unless an agreement is first obtained from the party of the first part except such as is herein specifically

mentioned. The parties of the second part are to keep a correct account of all phosphate rock mined and shipped from said lands, and the payments of royalties shall be made according to railroad weights as the rock may be shipped, and any railroad transporting the said rock is hereby authorized and directed to give statements and copies of bills of lading to any agent or authorized representative of the said party of the first part of any and all shipments of phosphate rock, or any other product that may be made from time to time during this contract, and the parties of the second part shall render statements of such shipments to the party of the first part whenever requested to do so, and the books of the parties of the second part shall be open to the inspection of the party of the first part, or his authorized agents.

The party of the first part agrees to assist the parties of the second part to secure wood from the mill now located near or adjacent to the tract of land herein described, said mill being now known as the West Coffee Lumber Company Mill, second parties to have one-half of all the wood at the best terms possible.

Parties of the second part have the right to terminate this agreement if at any time during the pendency thereof it shall appear from the mining operations actually conducted that the matrix contains less than ten per cent merchantable phosphate, and that there be no longer phosphate deposits on the said lands which could be practically mined, the matrix showing less than ten per cent merchantable phosphate. However, if the parties of the second part shall desire to terminate this agreement by reason of the matrix showing less than ten per cent merchantable phosphate rock, they shall give thirty days prior notice in writing to the party of the first part of such intention, and an opportunity shall be afforded the party of the first part to be present and witness any test that may be made

attempting to show that the merchantable phosphate is less than ten per cent of the matrix.

The parties of the second part may further terminate this contract on thirty days prior notice in writing when it shall satisfactorily appear that the phosphate deposits shall have become so scattered or exhausted in quantity as not to admit of practical mining operations.

In connection with the mining operations the party of the second part agrees not to cover any deposits of merchantable phosphate on said land by dumping thereon the overburden or the water and debris from the plant, but such refuse matter shall be conducted to such points as not to interfere with or cover merchantable phosphate deposits that may exist on said lands.

Such plant, or plants, as the parties of the second part may erect upon the lands described for the purpose of conducting mining operations thereon, together with the buildings, spur tracks, tram roads, and improvements that may be placed upon said property by the second parties shall be treated as personal property, subject to removal at the termination of this agreement; provided, however, that the said plant, or plants, and any or all other improvements placed upon said land by the second parties shall not be removed until royalties accruing under this agreement shall have become fully paid and discharged, and a lien is hereby declared to exist on said phosphate plant, or plants, and other improvements to secure the payment of royalties that may become due and payable hereunder.

The parties of the second part shall have the right to use the timber on said lands for all mining purposes, the preparation of phosphate rock for market for the erection of plant and buildings, the construction of railroad track, spurs, tram roads, and for any other purpose needful to the successful prosecution of said mining operations.

In the event of default of payment of royalties when due, or in the event of failure of the parties of the second part to comply with any of the terms of this lease or agreement on their part to be performed, the party of the first part may, at his option, terminate this agreement and be entitled to re-enter on giving parties of the second part thirty days prior notice in writing of his intention to so terminate the same, providing the default complained of against the parties of the second part shall continue during the said period of thirty days.

The party of the first part covenants and agrees that he is the lawful owner of the property herein mentioned and described, that he has good and lawful authority to make this agreement, and there are no liens, contracts or encumbrances against said property, except as herein specifically mentioned, to-wit: a certain mortgage of $2000.00 running to T. T. Landrum and J. C Priest on file in the office of the clerk of the circuit court of Citrus county, Fla; that the party of the first part will forever warrant and defend the rights of the second parties in the quiet and peaceable possession, occupation and enjoyment of said property under the terms of this contract and agreement during the pendency thereof.

It is mutually agreed between the parties hereto that should the parties of the second part be compelled to take up and pay the mortgage mentioned herein in order to enjoy the rights under this agreement they shall have the right to deduct the amount they are compelled to pay out from the royalties that may be due the party of the first part, or if no royalties are at that time due, from the first royalties that may become due thereafter until such amount as they have paid out shall be returned to them.

This contract and agreement shall be binding upon the heirs, executors, administrators and assigns of the respective parties hereto.

Unless terminated by some of the provisions herein mentioned, or the exercise of some of the rights herein contained, this contract shall be in force and run for a period of ten years from the date hereof, and at the end of that period parties of the second part shall have the privilege of renewal upon the same terms and conditions.

IN WITNESS WHEREOF, the said parties have hereunto set their hands and affixed their seals on the day and year first above mentioned, this agreement being made and signed in duplicate:

|                   |         |
|-------------------|---------|
| A. C. PHIEL       | (Seal)  |
| J. C. WILLIAMS    | (Seal)  |
| E. W. CLARK       | (Seal)  |

Signed, Sealed and De-
livered in presence of
C. Durant
Merton L. Tuthill.

And the plaintiff alleges that under and in pursuance of said contract, the defendants immediately entered upon the premises therein described and erected a Phosphate Plant and Phosphate machinery for the mining of phosphate therefrom, and have ever since enjoyed the uses of said premises for the purpose of mining phosphate and are now in possession of said premises under the said contract and the plaintiff alleges that although he has well and truly kept and performed each and every condition in said contract contained therein, entitling him to have and receive from the defendants a royalty at the rate of one dollar and twenty-five cents ($1.25) per ton on ten thousand tons of phosphate rock to be mined from the said premises by the defendants within one year from the expiration of a period of ninety days after the date of the said contract, to-wit, the sum of twelve thousand and five

hundred ($12,500) dollars; yet, the defendants have not paid to the plaintiff the said sum of twelve thousand and five hundred dollars, or any part thereof, wherefore, the plaintiff sues the defendants and claims twenty-five thousand dollars damages.

Second count. And the plaintiff sues the defendants for money payable by the defendants to the plaintiff for goods bargained and sold by the plaintiff to the defendants, work done and materials furnished, by the plaintiff for the defendants at their request; money lent by the plaintiff to the defendants; money paid by the plaintiff for the defendants at their request; money received by the defendants for the use of the plaintiff; and money found to be due from the defendants to the plaintiff on accounts stated between them.

Wherefore, the plaintiff sues the defendants and claims twenty-five thousand ($25,000) dollars damages."

The bill of particulars attached to the declaration is as follows:

"To royalties at one dollar and twenty-five cents ($1.25) per ton on ten thousand tons of phosphate rock, twelve thousand and five hundred ($12,500) dollars.

To interest on account due as royalty one thousand ($1000) dollars."

On the second of August, 1909, the defendants filed a demurrer to the declaration as bad in substance and stated as substantial matters of law to be argued, that:

"1st. The declaration fails to state a cause of action.

2nd. The said declaration fails to show any breach by the defendant of the alleged contract set out therein.

3rd. Said declaration fails to allege that the said defendant ever mined said phosphate in said lands.

4th. Said declaration fails to allege that there was phosphate upon the lands of the kind guaranteed in the contract.

5th. Said declaration fails to allege that any phosphate has been shipped from said premises and under the terms of the contract, plaintiff is not entitled to any money except as phosphate was shipped."

This demurrer was overruled on October 4th, 1909, and defendants given thirty days leave to plead.

On the third of November, 1909, the defendants filed four pleas. In the first setting up that no royalty was to be paid until the phosphate had been mined and shipped, and that no phosphate had been shipped from the mines. In the second plea, in substance, that ever since they commenced mining it has been impossible to sell hard rock phosphate—the only kind upon the premises. In the third they were not required by the contract to sell phosphate if the price was low, and that the price has been too low to justify its sale; and in the fourth to the second count in the declaration, the plea of never were indebted. These pleas were filed without being sworn to.

On the 20th of November, 1909, the Circuit Judge signed the following order and judgment:

"A. C. PHIEL,
  Plaintiff,

 v.

J. C. WILLIAMS and E. W. CLARK,
    Defendants.

This cause coming on to be heard upon the ex parte application of the plaintiff by his attorneys for final judgment against the defendants, and the court having heretofore, on the 4th day of October, A. D., 1907, overruled the defendant's demurrer to the plaintiff's declaration, and given the defendants thirty days within which to plead to the said declaration, and it further appearing to the court that the unsworn pleas filed by the defendants to the

said declaration are, and each of them is, wholly frivolous and immaterial, and tender no issues of fact, it is therefore considered by the court that the plaintiff is entitled to judgment against the defendants, and it appearing to the court that there is due and owing from the defendants to the plaintiff the sum of thirteen thousand, two hundred and ninety-six and 57/100 dollars, it is therefore considered by the court that the plaintiff, A. C. Phiel, do have and recover of and from the defendants, J. C. Williams and E. W. Clark, the sum of thirteen thousand, two hundred and ninety-six and 57/100 dollars for his damages, together with the costs of suit herein taxed at the sum of five and 53/100 dollars, and that execution do issue therefor to be levied on the goods and chattels, lands and tenements of the said defendants and to the plaintiff rendered.

Ordered at Chambers in Tampa, Florida, on this the 20th day of November, A. D., 1909.

J. B. WALL,<br>
Judge."

This judgment is here for review on writ of error.

There are five assignments of error. In substance:

1st. The overruling of the demurrer to the declaration.

2nd. The court erred because the declaration shows no cause of action.

3rd. Because the entering of judgment was an ex parte proceeding.

4th. Because the court erred in striking the pleas without notice to the defendants.

5th. Because there was no testimony before the court on which judgment could be rendered.

In support of the first assignment it is contended here that it was essential for the plaintiff to have alleged in the declaration and proven that there was merchantable phosphate upon the lands to the extent of ten thousand

tons, and that that quantity had been shipped from the lands, because he was not entitled to royalties under the contract until the rock was actually shipped.

While there is no express covenant on the part of the lessor that there was phosphate rock on the leased lands, yet it is plain that the parties to the contract assumed that there was phosphate sufficient to enable the lessees to comply with the terms of the contract. There is nothing to show the contrary. Upon this assumption they positively agreed to dig, mine and ship from the first plant to be erected not less than ten thousand tons of phosphate each year, the operations to commence ninety days from the date of the contract, and continue during its life as otherwise provided and agreed, unless prevented by something beyond the control of the parties of the second part. For such phosphate they agreed to pay $1.25 per ton as royalty. It is also provided that if the lessees failed to mine and ship the stipulated amount of phosphate for any year on account of the low price, then any excess of royalties they may have paid over the minimum tonnage of preceding years shall be allowed as a credit on royalties to accrue on the succeeding years. There is no intimation whatever that royalties were not to be paid because of the low price of phosphate. We think the special count of the declaration shows a good cause of action. If there were any proper defences to the action they should have been pleaded. Hiller v. Walter Ray & Co., 59 Fla., 285, 52 South. Rep., 623. Moreover the declaration in addition to the special count, contained the common counts, and the demurrer was addressed to the whole declaration. It was therefore properly overruled. Gulf Lumber Co. v. Walsh, 49 Fla., 175, 38 South. Rep., 831, and cases therein cited. This disposes of the first two assignments of error.

The third and fourth assignments of error question the

action of the court in ignoring the pleas and entering final judgment for the plaintiff. It is contended here that the plaintiff waived the objection that the pleas were not sworn to. We find nothing in the record which shows such a waiver. We infer from the order of the judge that the plaintiff treated the pleas as a nullity, which he had a right to do. Dudley v. White, 44 Fla., 264, text 270, 31 South. Rep., 830.

The last contention by the plaintiff in error is that the record shows the judge entered the final judgment without having the original contract or lease produced and filed. There is no bill of exceptions in the case. There is no statement in the judge's order that no evidence was produced before him. We must presume, therefore, that the circuit judge acted regularly and upon sufficient proof. There is no contention here that he did not otherwise have authority to enter the judgment.

The judgment below is affirmed.

TAYLOR and PARKHILL, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.