DURHAM TROPICAL LAND CORP., *Appellant*, vs. SUN GARDEN SALES CO., et al., *Appellees*.

138 So. 21.

143 So. 758.

En Banc.

Opinion filed December 7, 1931.

Opinion on rehearing filed August 9, 1932.

Petition for rehearing denied October 6, 1932.

*Whitaker, Himes & Whitaker* for Appellant;

*Mabry, Reaves* and *Carlton* for Appellees.

ANDREWS, Commissioner.—This cause is here upon an appeal from the Circuit Court of Pinellas County based upon an order granting a motion of complainant to strike that portion of defendant's answer setting up two counterclaims and an order of the trial court sustaining objections of complainants to the defendant filing certain proffered amendments to the same counterclaims.

This case was heretofore reviewed by this court and an order of the trial court overruling general and special demurrers to the same bill of complaint was affirmed without formal opinion. See 97 Fla. 1084, 117 Sou. 878.

The complainants seek an accounting between complainants *as sale agents* and defendant *as the owner* of a large tract of land in Clay and Putnam Counties, Florida, and the bill alleges in substance that complainants entered into a sales contract with defendant as owner, whereby the owner was to receive a certain net price of Fifteen Dollars ($15.00) per acre for all lands sold by complainants and certain additional percentages of the "sales price" of all lands sold above Fifteen Dollars ($15.00) per acre; the "sales price" being stated at not less than Thirty Dollars ($30.00) per acre. All sales to purchasers were required to be approved by, and deposited with, the defendant owner to whom all deferred payments of purchasers were made, and periodical reports and remittances were made to complainants' agents. The bill further alleges that after the complainants' contract, as agents, terminated, as provided by its terms, the defendant reported collections and made remittances to complainants for several months when defendants ceased reporting and remitting, and thereupon

disclaimed further obligation to do so. If complainants obtain the accounting, they pray to recover from defendant their portion of any collections from purchasers that were made after defendant ceased making reports and remittances.

The main question presented for determination is what the parties intended concerning the compensation of the sales agents in the event their employment should cease before May 1, 1927, by reason of their failure during any preceding three months to make sale of three thousand (3,000) acres.

The first counterclaim stricken by the Chancellor asserts in substance that under the contract of employment the complainants *guaranteed* the payment to the defendant owners the sum of Fifteen Dollars ($15.00) per acre net for *all lands sold* up to May 1, 1926, and that because many of the purchasers defaulted and have not paid in the aggregate that amount per acre for each acre sold by complainants that defendant is entitled to withhold from complainants enough of their monies arising from deferred payments to make up the said Fifteen Dollars ($15.00) per acre on all lands sold by complainants.

Defendant (appellant here) states in his brief that the "first counterclaim" was predicated upon the following obligation which the agents assumed in Section 16 of the contract:

"The agents guarantee to the Company the sum of Fifteen Dollars ($15.00) per acre as the net price to it from the sale of said lands."

As we construe it, this provision means that

"The agents guarantee to the Company the sum of Fifteen Dollars ($15.00) per acre as the *net price* (to be paid) to it *from the sale of said lands* (sold under approved contracts.)."

(The words in parenthesis and italics ours.)

If the *construction of appellant* as to the first sentence of Section 25 of the contract, providing that:

> "The company may terminate this contract at such time after August 1, 1925, as the combined sales of any three consecutive calendar months shall aggregate less than three thousand acres, whereupon all rights of the Agents hereunder shall cease."

is correct, which is to the effect that all obligations of the company to pay any further commissions out of collections from sales of any parcel of land sold by complainants ceased when the agency contract was cancelled on April 6, 1926, then it seems that the former order of the trial court, which was affirmed by this court, overruling the demurrer of defendant, which in substance raised the same question, ought to become the law of this case on that point. For it in effect holds that complainants are entitled to receive their portion of purchaser's deferred payments, as represented in the unpaid commissions on all sales approved by defendant owner.

In defendant's letter of April 26, 1926, to complainants, which was written after giving notice of the cancellation of the Agency contract on April 6, 1926, appears the following:

> "Please understand that it is not the desire of this Company to deprive you of any commissions already earned, and you may count upon us turning over to you such portions of all monies paid in on accounts receivable to which, according to the contract of April 9, 1925, you are justly entitled."

The above is a portion of a letter of defendant, which constitutes "Exhibit 5" to complainant's bill, and it indicates the construction which *defendant* placed upon the rights of the parties under the agency contract *after* its cancellation.

The terms—"Any commissions already earned" and to be "paid in on accounts receivable to which" under

the contract "you are justly entitled"—do not seem to be ambiguous; in fact, defendant's own construction above given appears to accord with that placed upon it by complainants.

The general rule is that constructions placed upon a contract with ambiguous and doubtful language is material and important in determining its true meaning. Sahlberg v. J. A. Teague Furniture Co. (Fla.), 130 So. 432. See number of cases there cited.

The intention of the parties to a contract is to be deduced from language employed, and such intention when expressed is controlling, regardless of intention existing *in the minds* of parties. Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, and cases there cited.

Under the construction now placed upon the sales contract by the defendant the complainants would not be entitled to any portions of commissions earned on sales which came into the hands of defendant after it ceased making reports and remittances to complainants though the sales were approved by defendant. Forfeiture clauses are not favored and courts of equity always mitigate or relieve against them, when it can be done without violence to the contract of the parties. Rader v. Prader (Fla.), 130 So. 15; Hemphill v. Pesat, 98 Fla. 124, 123 So. 561.

After careful examination of the contract as a whole and by sections, and in view of the former affirmance by this Court of the order overruling demurrers of defendant to the same bill of complaint, which demurrers raised substantially the same question now presented by the counterclaim, we have come to the conclusion that a reasonable construction to be placed upon the sales contract is that it fixes a minimum net price which the owner was entitled to receive on each sale under any sales which the agents are authorized to make; in fact,

the terms seem to be clear that the agents (plaintiffs) guaranteed that they would not make any sales contracts with purchasers which would not entitle the company to receive a *minimum* of $15.00 per acre. It does not *guarantee* that the whole of the sales price would be *collected;* in fact, all contracts of sale to the purchasers as to amounts of payments, terms, etc., are required by section 24 of the agency contract to be made *subject* to the approval of the owner company.

It is observed that "net price," as defined in paragraph 3 of the contract, is "the amount which the company shall *receive* per acre for its lands," and that "sale price" is defined to be "the amount, through the efforts of the Agents, the Buyers *shall pay* for said lands." While Section 16 of the contract provides that the agents guarantee to the company the sum of $15.00 per acre, it seems to mean that they guarantee it "as the net price to it *from the sale of the lands;*" in other words, it means that no *sales contract* would be made under the Agency Contract that would yield less than $15.00 per acre to the owner when paid, as that is the *minimum price* fixed by the contract on each acre of land. All above that minimum "net price" is a "sales price" and apportioned between them upon a definite percentage basis. In other words, no sale was authorized to be made by complainant that would, when paid, yield less than $15.00 net per acre, as it fixes that amount per acre "as the net price to it from the *sale* of said lands," at least until May 1, 1926, or when the agency was cancelled. This construction is also consistent with the language used in Section 22 of the Agency Contract which provides that in the event that the contract of any buyer shall be in default and become null and void that the "company and the agent shall each be entitled. *to retain* the moneys paid to them respectively under this con-

tract out of the funds derived from such defaulted contract.'' It is not reasonable to assume that the above provisions would have been put in the contract if the agents had guaranteed to pay $15.00 per acre for every acre sold regardless of whether the purchaser paid or not; in fact, it would have been very easy for the sales contract to have stated it clearly. This construction is in accord with Section 24, which provides that the agents must sell only to ''buyers acceptable to the company.''

The minimum ''sales price'' which was fixed by sections 15 and 16 of the agency contract at $30.00 per acre was evidently for the purpose of obtaining enough over the minimum ''net price'' to provide for commissions to complainants, as well as a further profit to owner.

It will be observed that the same question involving the first sentence of Section 25 of the Contract is raised in paragraph III of defendant's answer which is not directly involved in this appeal except by inference.

In the case of Ross v. Savage, et al., — Fla. —, 63 So. 148, this Court said:

"When words or terms having a definite legal meaning and effect knowingly used in a written instrument, the parties thereto will be presumed to have intended such words or terms to have the proper meaning and effect, at least in the absence of any contrary intention appearing in the instrument;'' and ''To that end all the different provisions of the instrument must be looked to and all construed so as to give effect to each and every of them if that can be done.'' Hull v. Burr, 58 Fla. 432, 50 So. 754.

Having reached the conclusion that the Chancellor did not commit error in granting complainants' motion to strike the ''first counterclaim'' contained in the answer of defendant it becomes unnecessary to consider here the said order with reference to the ''second counterclaim'' which covers alleged claims of sub-agents against com-

plainants, with which defendant, under plain provisions of the Agency Contract, had no connection; in fact, the sub-agency claims could not arise out of the cause of action between the parties to this suit. It also follows that the portion of the order sustaining complainants' objections to defendant filing the proffered amendments was not error.

Finding no reversible error the decree of the Chancellor is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below be, and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

---

## ON REHEARING.

ANDREWS, Commissioner.—The petition filed by the appellees upon which a rehearing was granted states that the opinion heretofore rendered (1) misconstrues the contract involved in the suit, and (2) overlooked the right of equitable set-off set up by the amended answer.

It must be conceded that the contract between the complainant as agent and the defendant as owner of the lands in question is very complicated and its apparently conflicting terms most difficult to reconcile. It is not the province of this Court, however, to undertake to divine what was "in the mind" of either of the contracting parties. The intent and purpose must be gathered from the wording of the whole contract and reasonable constructions to be placed upon all its provisions. See Marion Mortgage Co. vs. Howard, 100 Fla. 1418, 131 So. 529, and number of cases there cited.

The main ground asserted by the appellant for requesting a rehearing in this cause is that the court in its former opinion overlooked the rule giving a defendant the right of equitable set-off in cases of insolvency of complainant.

With reference to this point, it seems clear that the answer stricken by the trial court was not pleaded by the defendant upon the theory of "equitable set-off," and it does not conform to such pleas. The general rule is that in order for such a set off to be available in an equity suit it must show an *existing* debt or demand against complainant *in favor of defendant* and that it arose and existed under such circumstances and it is of such a nature that it would be inequitable to disallow it. 24 R. C. L. 865, sec. 70; 57 C. J. 446, sec. 96; 57 C. J. 463, sec. 117. The above prerequisites are not supported by the averments in the answer in the instant case.

As to the "second" counterclaim or set-off, it does not appear that the defendant acquired the claims of the sub-agents upon which the alleged equitable set-off was based *without knowledge* of such insolvency, but rather to the contrary. In fact, it is shown that the claims of the sub-agents against complainants set forth in the proposed amended answer, were acquired, if at all, *after* Defendant had refused to make further payments to complainants, and to that extent the defendant made it more difficult for the complainant to pay any claims that might be due from them to the sub-agents.

We think it is quite clear that under the circumstances of this case that the demands of these third persons (sub-agents) who are not parties to this suit, are not available as a set-off or counterclaim in favor of the defendant, and therefore the filing of the proposed amended answer was properly refused by the trial court. The general rule is that no counterclaim will be allowed to the de-

fendant which requires the bringing in of third parties who may have independent claims against the complainant. See North Chicago Rolling Mill Co. v. St. Louis Ore and Steel Co., 152 U. S. 596, 14 Sup. Ct. Rep. 710, 24 R. C. L. 860, sec. 64, also 57 C. J. 447-448, and many other decisions there cited.

The petition for rehearing further states that it is uncertain from the court's opinion as to what amount defendant is entitled to retain as the net price to it from the sales of lands effected by complainant.

The answer shows that defendant mainly relied as a defense upon that part of paragraph 25 of the contract which stipulates that if during any three consecutive months after August 1, 1925, the combined sales of complainants fail to aggregate three thousand acres that "all rights of agents hereunder shall cease;" that such failure occurred April 6, 1926, and that therefore complainants were not entitled to receive any part of any payment thereafter made by purchasers who had purchased lands prior to such termination.

We held in substance that such was not the proper construction, and, as bearing out that statement called attention to the letter of defendant to complainant dated April 26, 1926, which showed that defendant did not so construe it as now contended for, at the time the incident occurred. The defendant recognized in said letter, and we have so held, that while the rights of the agents to make further sales had terminated that they were entitled to their previously earned commissions on each tract of land sold under contracts approved and accepted by defendant at not less than the minimum "sales price" of $30.00 per acre— most, if not all, of the tracts being sold upon the small installment basis.

We in substance further held that if the amount collected per acre on any contract, approved by the owners,

did not exceed $15.00 per acre, which is the minimum "net price" guaranteed to be paid from "sales price" by complainants, that the latter would not be entitled to any of the payments made on any such defaulting contract. This would in substance mean that any of the contract price paid by the purchaser over fifteen dollars per acre would be subject to adjustment upon the apportionate basis provided for in the other portions of the contract.

Under this construction we cannot see—as stated in the Petition for Rehearing—that it is "uncertain from the court's opinion" as to "what amount the defendant is entitled to retain as the net price to it from the sales of lands." This matter at the proper time may be cleared up by the taking of testimony, if, and when that point in the proceedings is reached. In fact an accounting may show that under the above construction the defendant has fully paid complainants proportions of commissions due under each contract; likewise, if complainants have been overpaid an amended answer for counterclaim could be filed to cover such facts. The accounts are, we presume, in the custody of defendants who will be therefore held to know whether if anything, and how much, is due either party under the construction herein given.

Having reached the conclusion that the former decision rendered in this case should not be disturbed the same is hereby adhered to.

PER CURIAM.—The record in this cause having been considered by this Court on the rehearing granted, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the Court do adhere to the opinion filed and the judgment entered herein on the 7th day of December, 1931, and that the decree

of the Circuit Court in this cause be and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS AND BROWN, J.J., concur.

TERRELL AND DAVIS, J.J., dissent as to the equitable matter of set-off asserted.

---

### ON REHEARING.

PER CURIAM.—It having been represented to the Court by counsel for the respective parties that the parties to this cause have agreed to a settlement thereon and of all matters involved therein; therefore to the end that said settlement be speedily and satisfactorily effected, it is considered and ordered by the Court that the petition for rehearing filed herein by solicitors for Appellees be and the same is hereby denied and that the cause be immediately remanded to the circuit court without prejudice to the right and authority of the Circuit Judge to enter in the cause such order or decree as may be agreed upon by the respective parties hereto or their counsel and approved by the Court. It is so ordered.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.