**INTERNATIONAL ERECTORS, INC.,**
Appellant,

v.

**WILHOIT STEEL ERECTORS &
RENTAL SERVICE, et al.,**
Appellees.

**No. 24867.**

United States Court of Appeals
Fifth Circuit.

Sept. 4, 1968.

Rehearing Denied Oct. 18, 1968.

Richard E. Reckson, Eugene C. Heiman, of Heiman & Crary, Miami, Fla., for appellant.

Melvin T. Boyd, James E. Tribble, Miami, Fla., Blackwell, Walker & Gray, Miami, Fla., for appellee, Wilhoit Steel Erectors & Rental Service.

John H. Moore, II, Edward J. Marko, Fort Lauderdale, Fla., Mendez, Shaw & Moore, Fort Lauderdale, Fla., for appellee, Southern Engineering Co.

Before TUTTLE and GOLDBERG, Circuit Judges, and HOOPER, District Judge.

GOLDBERG, Circuit Judge.

This is a case of frustration arising out of unilateral and unarticulated contract expectations. The two questions presented here are (1) whether the contract between International Erectors, Inc., and Wilhoit Steel Erectors & Rental Service which subcontracted the work to International imposed any duty upon Wilhoit to supply materials according to

certain specifications and in a particular sequence, and (2) whether International, a sub-sub-sub-contractor may recover upon a third party beneficiary theory against Southern Engineering which had a contract with the general contractor, not a party to this suit, to fabricate and erect the steel.

## I. *Facts*

██ This diversity action [1] for breach of contract was brought by International against Wilhoit. The respective disputes arise out of contracts dealing with the construction of a plant for Sunbeam Electronics Company in Fort Lauderdale, Florida. The responsibility for construction of the plant was given to a general contractor who subcontracted to Southern the work of fabricating and erecting the structural steel portion of the job. Southern, while retaining the responsibility as to the general contractor for providing the steel for the construction job, sub-sub-contracted the erection of the steel to Wilhoit. Wilhoit sub-sub-sub-contracted the job of erecting the steel to International, but retained a duty to Southern to supervise and assist the erection.

The loss which International seeks to recoup by this suit occurred when the steel to be erected by International was not delivered in the proper condition and time sequence. International alleges that it had the necessary men and equipment present on the job site, but that the misfeasance of the steel supplier prevented the erection from proceeding as scheduled. This delay allegedly caused $36,-559.09 damages in the form of additional costs of labor and equipment, additional overhead, and loss of profit.

International can recover from these defendants only if one or both had a contractual obligation to furnish the steel to International.[2] The district court, sitting without a jury, held that Wilhoit was under no contractual obligation to supply steel to International. As to Southern the court, after four amended complaints, dismissed the suit with prejudice, holding that International had failed to allege any breach of duty. From these determinations International appeals.

## II. *International v. Wilhoit*

██ Since this is a diversity action, we interpret this contract according to the substantive law of Florida. Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Starling v. Gulf Life Ins. Co., 5 Cir. 1967, 382 F.2d 701, 705. We have not, however, found any Florida case directly in point under the facts presented here. We therefore must decide this case as we believe the Florida courts would decide if confronted with these facts. Stevens Industries, Inc. v. Maryland Casualty Co., 5 Cir. 1968, 391 F.2d 411, 413, and cases therein cited. Certain general principles of Florida contract law are clarion and we construe the contract between Wilhoit and International in the light of those principles.

██ The Florida Supreme Court has taken the position that crystalline and unambiguous language in a written contract is controlling as to the intention of the parties and thus to the legal effect of the contract provisions. In Durham Tropical Land Corp. v. Sun Garden Sales Co., 1931, 106 Fla. 429, 138 So. 21, reh. den., 1932, 106 Fla. 429, 143 So. 758, af-

---

1. International is a Florida corporation; Southern is a North Carolina corporation; and Wilhoit is a South Carolina corporation. Thus the requirement of "complete diversity" is met. See 1 Barron & Holtzoff, Federal Practice and Procedure § 26 [Wright rev.]

2. It is not questioned that Southern had a contractual duty to the general contractor to supply the steel. The pertinent questions are whether Southern's obligation to the general contractor was for the benefit of International and could be enforced by International, and whether Wilhoit had any obligation to International to assure that the steel be delivered to International in proper form and in proper sequence.

firmed 106 Fla. 429, 151 So. 327, the rule was stated as follows:

"The intention of the parties to a contract is to be deducted from language employed, and such intention, when expressed, is controlling, regardless of intention existing *in the minds* of parties. Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, and cases there cited." 138 So. 21 at p. 23.

See also Gendzier v. Bielecki, Fla.1957, 97 So.2d 604; Hamilton Const. Co. v. Board of Public Instruction, Fla.1953, 65 So.2d 729, 731; Lyng v. Bugbee Distributing Co., 1938, 133 Fla. 419, 182 So. 801, 802; Hurley v. Werley, Fla.Dist.Ct. App.1957, 203 So.2d 530, 537–538; Azalea Park Utilities v. Knox-Florida Develop. Corp., Fla.Dist.Ct.App.1961, 127 So.2d 121, 122–123. In construing such contractual language courts should attempt to give words and phrases the natural meaning or the meaning most commonly understood when considered in reference to the subject matter and the circumstances. Rupp Hotel Operating Co. v. Donn, 1947, 158 Fla. 541, 29 So.2d 441, 445; Florida Boca Ratan Housing Assoc. v. Marqusee Assoc., Fla.Dist.Ct. App.1965, 177 So.2d 370, 373; Miami National Bank v. Fink, Fla.Dist.Ct.App. 1965, 174 So.2d 38, 40.

The contract between Wilhoit and International Erectors provided that International Erectors was to "furnish all necessary labor, supervisions, equipment, supplies to unload from rail cars, haul, erect and touch-up paint approximately 225 tons of structural steel and 100 tons facia plates" in accordance with certain plans and specifications. This contract, which designated Wilhoit as "contractor" and International Erectors as "subcontractor" and Southern as "owner," provides in part as follows:

"Subcontractor [International] agrees to furnish and supply at Subcontractor's expense, unless hereinafter specified to the contrary, all labor, transportation, materials, apparatus, fuel, energy, light, water, scaffolding, tools, and other facilities necessary for the execution of the work specified in Paragraph First above.

"Contractor [Wilhoit] agrees to furnish and supply, at its expense, the following labor, materials, etc., for the doing and performing of the work specified in Paragraph First above, to-wit:

"*NONE*." (Emphasis added.)

■ We agree with the district court that this language expresses pellucidly and without ambiguity that at the time the contract was executed the parties did not contemplate that Wilhoit was to be responsible for the delivery of the steel. The use of the word "NONE" in the blank reserved for a description of the materials to be supplied by Wilhoit is an absolute and unequivocal statement that Wilhoit was not to be responsible for the delivery of any materials. "None" cannot mean "some," and without an obligation that some steel be delivered there can be no contractual responsibility for a failure to properly deliver steel.

Notwithstanding the preceding unmistakable disclaimer of all responsibility for providing materials, International argues: "By the contract of June 5, 1964, WILHOIT assumes the obligation regarding delivery of the steel in a clear and unambiguous manner." In support of this apparently serious contention International cites the following provision of its contract with Wilhoit, which by reference incorporates some of the terms of Wilhoit's contract with Southern:

"Contractor [Wilhoit] agrees to be bound to the Subcontractor [International], *except as herein modified and changed,* by all the obligations that Owner [Southern] assumes to the Contractor [Wilhoit] under said Principal Contract and Included Agreements [the contract between Southern and Wilhoit] and by all the provisions thereof affording remedies and redress to the Contractor [Wilhoit] from said Owner [Southern]." (Emphasis added.)

International argues that under the terms of the agreement between South-

ern and Wilhoit, Southern was obligated to fabricate and deliver the steel to the jobsite as required by the plans, specifications, and delivery schedules. Therefore, the argument proceeds, this provision obligated Wilhoit to provide the steel because the provision in effect imposed the duties of Southern upon Wilhoit.

The view we take of this contention does not require us to determine whether Southern promised Wilhoit that it would supply the steel as required in the plans, specifications, and delivery schedules.[3] We find that the phrase "except as herein modified and changed," which appears in the above quoted contract provisions, refers to the clause which says that Wilhoit undertakes to provide "NONE" materials, and that the "NONE" materials clause unequivocally negates any obligation to supply steel which might otherwise have been incorporated by reference.

The words "except as herein modified and changed" must be presumed to have been used for a specific purpose. They can neither be struck from the contract nor ignored. Their apparent purpose was to limit the otherwise broad provisions of the incorporation-by-reference clause by excluding from its scope certain express provisions of this contract, including the "NONE" materials clause. See Hardin Bag & Burlap Co. v. Fidelity & Guaranty Fire Corp., 1943, 203 La. 778, 14 So.2d 634, 635; cf. Gatliff Coal Co. v. Cox, 6 Cir. 1944, 142 F.2d 876, 882 ("herein"); Saulsberry v. Maddix, 6 Cir. 1944, 125 F.2d 430, 433 ("herein"); 39 C.J.S. Herein p. 892 (1944).

International's alternative contention is that the contract when read as a whole is ambiguous because the incorporation-by-reference clause conflicts with the "NONE" materials clause, and therefore that we must go outside the written contract to determine the intent of the parties. International is correct in its statement that the contract must be read as a whole. Triple E. Development Corp. v. Floridagold Citrus Corporation, Fla.1951, 51 So.2d 435, 438; Union Central Life Ins. Co. v. Neuhoff, 1946, 157 Fla. 98, 24 So.2d 906, 907. When reading the contract as a whole, however, we must interpret and construe clauses which appear to be repugnant to each other in a manner which will reconcile them, if such is possible. Quinerly v. Dundee Corp., 1947, 159 Fla. 219, 31 So. 2d 533; Florida Power Corp. v. City of Tallahassee, 1944, 154 Fla. 638, 18 So. 2d 671, 674; Paddock Bay Concrete Industries, Inc., Fla.Dist.Ct.App.1963, 154 So.2d 313. The "except as herein modified and changed" proviso makes reconciliation of the contract provisions in question not only possible but necessary. Read together the above two provisions are subject to only one construction and interpretation. There are, moreover, no patent ambiguities either by expression or omission. Expectations may have been extant, but expectations do not make contracts. No ambiguity exists and we will not create one so that we may add by construction terms which the parties have expressly omitted. See Friedman v. Virginia Metal Products Corp., Fla.1952, 56 So.2d 515, 33 A.L.R.2d 956.

Finding this integrated contract to be clear and unambiguous, we have no reason to discuss the implications of the testimony of George Ford, President of International Erectors, because the Florida parol evidence rule precludes the admission of such testimony. See Vine-

---

3. The District Court made the following finding:
> "A reading of the related contracts reveals no obligation on the part of Southern to furnish steel to Wilhoit. Based upon the Southern-Wilhoit contract, Wilhoit could be under no ob-

ligation to furnish steel to International under paragraph Sixth of the Wilhoit-International contract."

For a consistent construction of related contracts, see J. T. Majors & Son, Inc. v. Lipperd Bros., Inc., 10 Cir. 1958, 263 F.2d 650, 653 at [1].

berg v. Brunswick Corp., 5 Cir. 1968, 391 F.2d 184, at p. 188, wherein we said:

> "This court has recognized and applied the Florida parol evidence rule in the following form:
>
> > 'The so-called "parol evidence rule" forbids any addition to or contradiction of the terms of a written instrument by testimony purporting to show that, at or before the signing of the document, further or different terms were orally agreed upon by the parties; provided, always, that the written instrument appears on its face to express an agreement complete in all essential terms. This is not a mere rule of evidence. It is a rule of substantive law.' Jones, Commentaries on Evidence, Vol. 3, p. 2695, § 1482.
>
> Ramey v. Koons, 5 Cir.1956, 230 F.2d 802, at 804."

The appellant's final argument is that it is inconceivable that an experienced steel erector would enter into an agreement whereby it was to erect the steel for a large, complicated building within thirty-five working days without obtaining from the party with whom it contracted an understanding that the steel would be fabricated in accordance with the plans and specifications and delivered to the jobsite at the times and in the sequence required by a delivery schedule which is attached to the contract. Prudence and perhaps foresight might have insisted that a provision creating such an obligation be included in the written contract, but the written memorial of the parties' intention expressly and unequivocally negated any such obligation. This was an arms-length transaction between contractors of considerable experience in such matters and we cannot rewrite the contract just because one of the parties would in retrospection have written it differently. The Supreme Court of Florida has fre-quently and strongly stated that courts are not to rewrite contracts so as to include terms which they think the parties should have included. In Home Development Co. of St. Petersburg v. Bursani, Fla.1965, 178 So.2d 113, 117, the Supreme Court of Florida wrote:

> "By reconstructing the contract of the parties to accord with what he deemed to be the equities of the situation, the Master (and the courts which adopted and affirmed his recommendations) ignored the well settled rule that 'courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.' Beach Resort Hotel Corporation v. Wieder, Fla.1955, 79 So.2d 659. To like effect are the decisions of this court in Sapienza v. Bass, Fla.App., 1962, 144 So.2d 520; Gendzier v. Bie-lecki, Fla.1957, 97 So.2d 604; and Pierce v. Isaac, 1938, 134 Fla. 666, 184 So. 509. See also Zapetis v. Wills, Fla. App.1963, 156 So.2d 33; and Stemmler v. Moon Jewelry Co., Fla.App.1962, 139 So.2d 150."

See also Jefferson Ins. Co. v. Fischer, Fla.1964, 166 So.2d 129, 130; Haenal v. United States Fidelity & Guaranty Co., Fla.1956, 88 So.2d 888, 890; Voelker v. Combined Ins. Co. of America, Fla.1954, 73 So.2d 403, 408. Our court has also adhered to that rule. Aetna Casualty & Surety Co. v. Crawford, 5 Cir. 1967, 370 F.2d 917, 918.

We therefore hold that the District Court was correct in holding that International take nothing in its suit against Wilhoit.

### III. *International v. Southern*

Upon motion of Southern the District Court pursuant to Fed.R. Civ.P. 12(b) (6) [4] dismissed with preju-

---

4. (b) How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading there-to if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted, * * * If, on a

dice International's Fourth Amended Complaint as to Southern. Our guide is the rigorous rule given us by the Supreme Court in Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See also Mizell v. N. Broward Hospital Dist., 5 Cir. 1968, 392 F.2d 580; Bobby Jones Garden Apts., Inc. v. Suleski, 5 Cir. 1968, 391 F.2d 172, 177; Sunbeam Corp. v. Masters of Miami, 5 Cir. 1955, 225 F.2d 191, 193. Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate. Barber v. Motor Vessel "Blue Cat", 5 Cir. 1967, 372 F.2d 626, 627; cf. Keating v. Jones Development of Missouri, Inc., 5 Cir. 1968, 398 F.2d 1011 (summary judgment). Nevertheless, we uphold the dismissal where it is certain that plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of the allegations of the complaint. See Feinberg v. Leach, 5 Cir. 1957, 243 F.2d 64; Hilliard v. Brown, 5 Cir. 1948, 170 F.2d 397, 398; 1A Barron and Holtzoff, Federal Practice and Procedure § 356 (Wright rev.); 2A Moore, Federal Practice § 12.08.

International's Fourth Amended Complaint alleges a right of recovery as a third party beneficiary as follows:

"  *  *  * Southern breached its obligations to the contractor, and to Plaintiff, a third party beneficiary,  *  *  * in that said Defendants failed to comply with the terms of the contract of the contractor with the owner, the general and special conditions of said contract, and the drawings and specifications insofar as same are applicable to the steel erection work, in that Defendants failed to provide the steel and materials to be erected by the Plaintiff at the times and in the manner specified by said contract, general and special conditions, drawings and specifications, and particularly the structural steel progress schedule dated April 24, 1964,  *  * "

Reduced to its essentials, International's complaint against Southern alleges that International as a third party beneficiary can enforce the contract between Southern and the general contractor under which Southern undertook to fabricate and erect the steel in question.

To determine whether International's complaint stated a cause of action, we look to Florida third party beneficiary law, which our Court has summarized as follows:

"Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries. Third party beneficiaries in the first two classes have a right to sue. Fidelity & Guaranty Co. of New York v. Plumbing Department Store, Inc., et al., 117 Fla. 119, 157 So. 506 (1934); Enns-Halbe Co. v. Templeton, 101 Fla. 609, 135 So. 135 (1931). On the other hand, third party beneficiaries recognized as incidental beneficiaries have no enforceable rights under a contract. East Coast Stores v. Cuthbert, 101 Fla. 25, 133 So. 863 (1931)." Barzda v. Quality Courts Motel, Inc., 5 Cir. 1967, 386 F.2d 417, 418.

See also Johnson Farm Equipment v. Cook, 8 Cir. 1956, 230 F.2d 119, 124; Donovan Const. Co. v. General Electric Co., D.Minn.1955, 133 F.Supp. 870, 874–77; Restatement of Contracts § 133; 4 Corbin on Contracts, §§ 774, 779C; 2 Williston on Contracts § 356.

motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

■ The Florida courts require that there must have been an intent to benefit the third party at the time the promisor and promisee entered into the contract in order for the third party to be classified as either a donee or a creditor beneficiary. If no such intention to benefit is found in the contract, the third party is an incidental beneficiary and has no rights enforceable against the promisor under the contract. See Marianna Lime Products Co. v. McKay, 1933, 109 Fla. 275, 147 So. 264, 265; East Coast Stores v. Cuthbert, 1931, 101 Fla. 25, 133 So. 863, 866; First National Bank v. Perkins, 1921, 81 Fla. 341, 87 So. 912, 916; McCann Plumbing Co. v. Plumbing Industry Program, Fla.Dist. Ct.App.1958, 105 So.2d 26, 27. In Di Camillo v. Westinghouse Electric Corp., Fla.Dist.Ct.App.1960, 122 So.2d 499, 500, a Florida appellate court stated:

> " * * * It does not always follow that only the formal parties to a contract have an enforceable interest in its performance. On the contrary, a third party, even though a stranger to the consideration, may maintain an action on the contract under certain provisions and conditions. Thus, where the nature or terms of a contract reveal the intention of the formal parties thereto that its provisions be not merely for their own benefit but also for the benefit of a third party, the benefit to that third party being one of the direct and primary objects of the contract, such a third party action may be maintained. American Surety Co. of New York v. Smith, 1930, 100 Fla. 1012, 130 So. 440."

See also Cedillo v. Standard Oil Co. of Texas, 5 Cir. 1961, 291 F.2d 246; Hess v. Factors Corp. of America, E.D.Pa. 1948, 80 F.Supp. 727, 728.

"Intent to benefit" in a third party beneficiary context has become almost a phrase of art. In Hamill v. Maryland Cas. Co., 10 Cir. 1954, 209 F.2d 338, 341, the Tenth Circuit explained the meaning given to that phrase by the courts as follows:

> " ' "Intent, in its legal sense, is quite distinct from motive. It is defined as the purpose to use a particular means to effect a certain result. Motive is the reason which leads the mind to desire that result." ' See James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 561, 22 A.L.R.2d 639. Moreover, Mr. Williston says, 'There is no requirement of a mutual intent, as to right of enforcement, on the part of the contracting parties; instead, *it is the intent or purpose of the promisee who pays for the promise that has been generally looked upon as governing* * * * if an intent can legitimately be found to give a third party a right, the intent should be given effect.' Williston, § 356A. It has been said that so long as the contract necessarily and directly benefits the third party, he may enforce it. Byram Lbr. & Supply Co. v. Page, 109 Conn. 256, 146 A. 293. Otherwise stated, if the 'performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary', he is a creditor beneficiary and may enforce the promise. See Sections 133 (b) and 136(1) (a) Restatement Contracts; Williston, § 361. The beneficiary's right is of course limited by the terms of the promise. See Williston § 364A." (Emphasis added.)

■ With these precepts in mind we find that at the time the contract between Southern and the general contractor was entered into there was no intention to confer any benefit upon International. Southern promised the general contractor that it would, for the consideration stated supply and erect the steel in compliance with the specifications of the contract between the owner and the general contractor. There is nothing in the contract which evidences any intention to benefit International or, for that matter, any sub-sub-sub-contractor. Furthermore, at the time the contract was executed the only party to the contract whose intention to benefit would be relevant here, the general contractor, did not contemplate that Southern would sub-

sub-contract the erection work to Wilhoit which in turn would sub-sub-sub-contract that erection work to International. Nor was the possibility of any sub-sub-sub-contractor entering into the picture contemplated. To say that the promisee, the general contractor, thought of and intended to benefit International taxes credulity and is totally out of the realm of reality. All the general contractor wanted was Southern's promise to fabricate and erect the steel for the stated consideration according to the specifications and within the specified time. It would take the most artificial and tortuous reasoning to permit application of the third-party beneficiary theory to the facts of the case at bar. We therefore reject International's contention that it was a third-party beneficiary to the contract between the general contractor and Southern which had the right to damages for the contract's breach. Cf. Halliburton Co. v. Norton Drilling Co., 5 Cir. 1962, 302 F.2d 431, 435.

Identical reasoning leads us to the conclusion that International would not be a third-party beneficiary to the contract between Southern and Wilhoit even if there were a promise by Southern to supply the steel in conformity with the building plans and the delivery schedules.

We agree with the district court that International's Fourth Amended Complaint failed to state a cause of action against Southern and therefore hold that the district court's dismissal of the complaint for failure to state a cause of action was proper.

IV. *Retainage*

 The parties are agreed that International is entitled to the retainage of $6,216.10. The dispute is over the district court's order that International execute a release to Southern before being entitled to payment of the retainage. We have found nothing in the record which conditions the right of payment of the retainage upon the execution of a release to Southern. All we find is a provision in the contract between the general contractor and Southern which says that payment of the 10% retainage will be made within 30 days after acceptance by owner and/or architect if all conditions of the contract have been met. We reverse and remand to the district court for determination of what, if any predicates by way of release or evidence of satisfaction are necessary as a condition precedent to the payment of the retainage.

We are in agreement with the district court's holding that International take nothing in its suit against Wilhoit and that International's Fourth Amended Complaint failed to state a cause of action against Southern. The judgment of the district court is therefore

Affirmed in part and reversed and remanded in part.