550 So.2d 1135 (1989)
Ahmad IZADI, Appellant,
v.
MACHADO (GUS) FORD, INC., Appellee.
No. 88-1346.
District Court of Appeal of Florida, Third District.
August 1, 1989.
*1136 Jerry Kahn, Miami Beach, for appellant.
Fine, Jacobson, Schwartz, Nash, Block & England and Jorge L. Guerra, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
This is an appeal from the dismissal with prejudice of a three count complaint for damages arising out of the following advertisement placed by the appellee in the February 21, 1988 edition of the Miami Herald:
*1137 
*1138 The complaint, the allegations of which must at this stage be regarded as true, alleged that the plaintiff Izadi attempted to purchase a 1988 Ford Ranger Pick-Up  the vehicle referred to at the foot of the ad  by tendering Gus Machado Ford $3,595 in cash[1] and an unspecified trade-in.[2] The proposal was made on the basis of his belief that the ad offered $3,000 as a "minimum trade-in allowance" for any vehicle, regardless of its actual value. As is elaborated below, the putative grounds for this understanding were that the $3,000 trade-in figure was prominently referred to at the top of the ad apparently as a portion of the consideration needed to "buy a[3] new Ford" and that it was also designated as the projected deduction from the $7,095 gross cost for the Ranger Pick-Up. Machado, however, in fact refused to recognize this interpretation of its advertisement and turned Izadi down. In doing so, it apparently relied instead on the infinitesimally small print under the $3,000 figure which indicated it applied only toward the purchase of "any New '88 Eddie Bauer Aerostar or Turbo T-Bird in stock"  neither of which was mentioned in the remainder of the ad  and the statements in the individual vehicle portions that the offer was based on a trade-in that was "worth $3,000."[4] [e.s.] Izadi then brought the present action based on claims of breach of contract, fraud and statutory violations involving misleading advertising. We hold that the trial judge erroneously held the contract and misleading advertising counts insufficient, but correctly dismissed the claim for fraud.
1. Breach of Contract. We first hold, on two somewhat distinct but closely related grounds, that the complaint states a cause of action for breach of an alleged contract which arose when Izadi accepted an offer contained in the advertisement, which was essentially to allow $3,000 toward the purchase of the Ranger for any vehicle the reader-offeree would produce, or, to put the same proposed deal in different words, to sell the Ranger for $3,595, plus any vehicle.
(a) It is of course well settled that a completed contract or, as here, an allegedly binding offer must be viewed as a whole, with due emphasis placed upon each of what may be inconsistent or conflicting provisions. NLRB v. Federbush Co., 121 F.2d 954, 957 (2d Cir.1941) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used... ."); Durham Tropical Land Corp. v. Sun Garden Sales Co., 106 Fla. 429, 138 So. 21 (1931), aff'd, 106 Fla. 429, 151 So. 327 (1932); Ross v. Savage, 66 Fla. 106, 63 So. 148 (1913); Transport Rental Systems, Inc. v. Hertz Corp., 129 So.2d 454, 456 (Fla.3d DCA 1961) ("The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions when they have reference to the main purpose."); 11 Fla.Jur. 2d Contracts § 121 (1979). In this case, that process might well involve disregarding both the superfine print and apparent qualification as to the value of the trade-in, as contradictory to the far more prominent thrust of the advertisement to the effect that $3,000 will be allowed for any trade-in on any Ford. Transport Rental Systems, Inc. v. Hertz Corp., 129 So.2d at 456 ("If a contract contains clauses which are apparently repugnant to each other, they must be given such an interpretation as will reconcile them."); 11 Fla.Jur.2d Contracts *1139 § 118; see supra notes 1-3, and accompanying text. We therefore believe that the complaint appropriately alleges[5] that, objectively considered, the advertisement indeed contained just the unqualified $3,000 offer which was accepted by the plaintiff.[6] On the face of the pleadings, the case thus is like many previous ones in which it has been held, contrary to what is perhaps the usual rule, see 1 Williston on Contracts § 27 (W. Jaeger 3d ed. 1957); 1 Corbin on Contracts § 25 (1963), that an enforceable contract arises from an offer contained in an advertisement. R.E. Crummer & Co. v. Nuveen, 147 F.2d 3 (7th Cir.1945); Lefkowitz v. Great Minneapolis Surplus Store, 251 Minn. 188, 86 N.W.2d 689 (1957); Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603 (1945); Payne v. Lautz Bros. & Co., 166 N.Y.S. 844 (City Ct. 1916), aff'd, 168 N.Y.S. 369 (Sup.Ct. 1918), aff'd, 185 A.D. 904, 171 N.Y.S. 1094 (1918); Oliver v. Henley, 21 S.W.2d 576 (Tex.Civ.App. 1929); see Steinberg v. Chicago Medical School, 69 Ill.2d 320, 13 Ill. Dec. 699, 371 N.E.2d 634 (1977); 1 Williston on Contracts § 27, at 65 (1957). See generally Annot., Advertisement Addressed to Public Relating to Sale or Purchase of Goods at the Specified Price As an Offer the Acceptance of Which Will Consummate a Contract, 43 A.L.R.3d 1102 (1972).
Of course, if an offer were indeed conveyed by an objective reading of the ad, it does not matter that the car dealer may subjectively have not intended for its chosen language to constitute a binding offer. As Williston states:
[T]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.
1 Williston on Contracts § 94, at 339-340; see also Crummer, 147 F.2d at 3; Lefkowitz, 251 Minn. at 191, 86 N.W.2d at 691; Turner, 353 Mo. at 1191-1192, 186 S.W.2d at 608; Payne, 166 N.Y.S. at 844; Henley, 21 S.W.2d at 576.[7] That rule seems directly to apply to this situation.
(b) As a somewhat different, and perhaps more significant basis for upholding the breach of contract claim, we point to the surely permissible conclusion from the carefully chosen language and arrangement of the advertisement itself that Machado  although it did not intend to adhere to the $3,000 trade-in representation  affirmatively, but wrongly sought to make the public believe that it would be honored; that, in other words, the offer was to be used as the "bait" to be followed by a "switch" to another deal when the acceptance of that offer was refused.[8] Indeed, it *1140 is difficult to offer any other explanation for the blanket representation of a $3,000 trade-in for any vehicle  which is then hedged in sub-microscopic print to apply only to two models which were not otherwise referred to in the ad  or the obvious non-coincidence that the only example of the trade-in for the three vehicles which was set out in the ad was the very same $3,000. This situation invokes the applicability of a line of persuasive authority that a binding offer may be implied from the very fact that deliberately misleading advertising intentionally leads the reader to the conclusion that one exists. See Corbin on Contracts § 64, at 139 (Supp. 1989) (where "bait and switch" advertising suspected, public policy "ought to justify a court in holding deceptive advertising to be an offer despite the seller's... intent not to make any such offer"). See generally Annot., Advertisement Addressed to Public Relating to Sale or Purchase of Goods at the Specified Price as an Offer the Acceptance of Which Will Consummate a Contract, 43 A.L.R.3d 1102 § 2[b], at 1107. In short, the dealer can hardly deny that it did not mean what it purposely misled its customer into believing. This doctrine is expressed in the Restatement (Second) of Contracts which states:
§ 20. Effect of Misunderstanding
* * * * * *
(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if
(a) that party does not know of any different meaning attached by the first party[.]
Restatement (Second) of Contracts § 20(2)(a) (1981); Restatement (Second) of Contracts § 20(2)(a) comment d ("[I]f one party knows the other's meaning and manifests assent intending to insist on a different meaning, he may be guilty of misrepresentation. Whether or not there is such misrepresentation as would give the other party the power of avoidance, there is a contract under Subsection (2)(a), and the mere negligence of the other party is immaterial." [e.s.]). In Johnson v. Capital City Ford Co., 85 So.2d 75 (La. App. 1955), the court dealt with a case very like this one, in which the issue was whether a newspaper advertisement stating that any purchaser who bought a 1954 automobile before a certain date could exchange it for a newer model without an extra charge constituted a binding offer. The dealership argued that, despite the plain wording of the advertisement, it had no intention of making an offer, but merely sought to lure customers to the sales lot; it claimed also that, because of the small print at the bottom of the contract, any promises by the purchaser to exchange the vehicle for a later model were not binding. The court rejected these contentions on the holding that a contract had been formed even though the dealership "had an erroneous belief as to what the advertisement, as written, meant, or what it would legally convey." Johnson, 85 So.2d at 80. As the court said:
There is entirely too much disregard of law and truth in the business, social, and political world of to-day. * * * It is time to hold men to their primary engagements to tell the truth and observe the law of common honesty and fair dealing.
Johnson, 85 So.2d at 82. We entirely agree. See also Harris v. Time, Inc., 237 Cal. Rptr. 584, 191 Cal. App.3d 449 (1987); Steinberg v. Chicago Medical School, 69 Ill.2d at 320, 13 Ill.Dec. at 699, 371 N.E.2d at 634; Riordan v. Auto. Club of New York, Inc., 100 Misc.2d 638, 422 N.Y.S.2d 811 (Sup.Ct. 1979).
2. Fraud. Because no cognizable damages arising out of any alleged tortious misrepresentation were alleged in the complaint, we agree that no cause of action for fraud was stated. See National Aircraft Servs., Inc. v. Aeroserv Int'l, Inc., 544 So.2d 1063 (Fla. 3d DCA 1989); Empire Fire & Marine Ins. Co. v. Black, 546 So.2d 732 (Fla. 3d DCA 1989). Thus, that count was properly dismissed.
3. Statutory Violation. It follows from what we have said concerning the allegedly misleading nature of the advertisement in making an offer which the advertiser *1141 did not intend to keep, that the complaint properly alleged claims for violations of the Florida Deceptive and Unfair Trade Practices Act, sections 501.201-501.213, Florida Statutes (1987),[9] and the statutory prohibition against misleading advertising, section 817.41, Florida Statutes (1987).[10] See Day v. Le-Jo Enters., 521 So.2d 175 (Fla. 3d DCA 1988) (evidence sufficient for jury question on unfair and deceptive trade practices); Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3d DCA 1984) (substantial competent evidence to support court's finding of violation of Florida Deceptive and Unfair Trade Practices Act), pet. for review denied, 461 So.2d 114 (Fla. 1985); Bill Branch Chevrolet, Inc. v. Burkert, 521 So.2d 153 (Fla. 2d DCA 1988) (jury verdict for plaintiff under breach of contract, violations of § 817.41 Fla. Stat. (1985), and fraud for misleading sales promotion offering vacation certificates to customers who purchased new vehicles), review denied, 531 So.2d 167 (Fla. 1988); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367 (Fla. 4th DCA 1981) (elements of common-law fraud sufficient when pled to state cause of action for misleading advertising under § 817.41, Fla. Stat.); Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 197 Cal. Rptr. 783, 673 P.2d 660 (1983) (complaint alleging a scheme to mislead customers by a series of misrepresentations in advertisement sufficient to state a cause of action for deceptive business practices and misleading advertising); Barnes v. Treece, 15 Wash. App. 437, 549 P.2d 1152 (1976) (objective manifestation of advertiser's intent to form a contract to be evaluated by the trier of fact); cf. Himes v. Brown & Co. Secs. Corp., 518 So.2d 937, 938 n. 1 (Fla. 3d DCA 1987) (actual damages must be alleged to state cause of action for misleading advertising and deceptive and unfair trade practices even where advertisement false as a matter of law).
Affirmed in part, reversed in part and remanded.
NOTES
[1] Plus a $500 factory rebate allowance.
[2] Although the value of the proposed trade-in was not stated, it may be readily assumed that it was substantially less than $3,000.
[3] In this context, "a" means "any." See United States Fidelity & Guaranty Co. v. State Farm Mut. Auto. Ins. Co., 369 So.2d 410, 412 (Fla. 3d DCA 1979).
[4] It is not insignificant that the only trade-in value referred to as to all three individual vehicles, including the Ranger Pick-Up, was $3,000  the same figure which appeared in large print as representing a "minimum trade-in allowance" for "a new Ford."
[5] We do not now decide what the ultimate construction of the offer may be, or whether the court or the jury should make this determination. Compare Sosa v. Knight-Ridder Newspapers, Inc., 435 So.2d 821 (Fla. 1983) with T-Jett Enters., Inc. v. Ernest & Stewart, Inc., 543 So.2d 390 (Fla. 3d DCA 1989) and Kirsh v. Mannen, 393 So.2d 63 (Fla. 3d DCA 1981).
[6] It goes almost without saying that the plaintiff's ability eventually to recover on the theories suggested in this opinion depends on the showing that he was, in fact, led or misled into a genuine  even if unjustified  belief that such an offer had indeed been made. If he were merely attempting to take a knowing advantage of imprecise language in the advertisement and did not, in fact, rely upon it, he may not recover. See Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367 (Fla. 4th DCA 1981); Restatement (Second) of Contracts § 167 comment a (1981) ("A misrepresentation is not a cause of a party's making a contract unless he relied on the misrepresentation in manifesting his assent.").
[7] To borrow from Oliver Wendell Holmes:

I do not suppose that you could prove, for purposes of construction as distinguished from avoidance, an oral declaration of even an agreement that words in a dispositive instrument making sense as they stand should have a different meaning from the common one; for instance that the parties to a contract orally agreed that when they wrote five hundred feet it should mean one hundred inches, or that Bunker Hill Monument should signify Old South Church.
O.W. Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 420 (1898-99).
[8] "`Bait and switch' describes an offer which is made not in order to sell the advertised product at the advertised price, but rather to draw the customer to the store to sell him another similar product which is more profitable to the advertiser." Tashof v. Federal Trade Commission, 437 F.2d 707, 709 n. 3 (D.C. Cir.1970).
[9] Unlawful acts and practices. 
(1) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
[10] Misleading advertising prohibited. 
(1) It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.