[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13101
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cv-62833-MGC

NATIONWIDE VAN LINES, INC.,

Plaintiff-Appellant,

versus

TRANSWORLD MOVERS INC.,
OHAD GUZI,
NATIONAL INVESTMENT GROUP, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 28, 2021)

Before WILLIAM PRYOR, Chief Judge, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Nationwide Van Lines, Inc., appeals the dismissal of its second amended complaint against Transworld Movers, Inc, its owner, Ohad Guzi, and their successor-in-interest, National Investment Group, Inc. (collectively "Transworld"). The district court ruled that the second amended complaint failed to state a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6). We affirm.

Nationwide Van Lines and Transworld compete to provide moving services in Florida and, as their names suggest, in interstate commerce. About two years after Nationwide Van Lines commenced operations, Transworld registered the domain name "nationwide-movers.com." Later, it used that website and service mark to promote its services.

Nationwide Van Lines filed a complaint, which it amended, against Transworld. Nationwide Van Lines complained of common law mark infringement, trademark infringement, unfair competition, false designation of origin, and cybersquatting. Transworld moved to dismiss for failure to state a claim. *See id.*

The district court dismissed the second amended complaint based on the failure of Nationwide Van Lines to plausibly state that it had a protectable interest in its mark. The district court ruled that the company failed to plead facts that

2

established it had ownership rights to its mark. Alternatively, the district court ruled that Nationwide Van Lines failed to allege sufficient facts to establish, for all its claims, that its trade name was distinctive, and also for its claim of cybersquatting, that Transworld acted in bad faith.

We review *de novo* the dismissal of a complaint for failure to state a claim. *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Nationwide Van Lines argues that its "allegations [had only to] provide for relief on any possible theory," but that is the wrong pleading standard. The decisions of our predecessor circuit that Nationwide Van Lines cites allowed a court to dismiss a complaint for failure to state a claim only when "it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations." *Robertson v. Johnston*, 376 F.2d 43, 45 (5th Cir. 1967); *see Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465,

3

471 (5th Cir. 1968). But the Supreme Court in *Twombly* rejected "[t]he 'no set of facts' language" "as an incomplete, negative gloss on an accepted pleading standard . . . ." 550 U.S. at 562–63. After *Twombly*, a complaint must contain "enough facts" to "nudge[] [its] claims across the line from conceivable to plausible." *Id.* at 570.

The district court did not err in determining that Nationwide Van Lines lacked ownership rights in its mark. The company alleged that it was "the first user of the subject mark[] nationwide," but a certified copy of a federal trademark registration established that another company used a strikingly similar mark decades earlier. "Rights in a trademark are determined by the date of the mark's first use in commerce." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015); *see* 15 U.S.C. § 1052(e), (f). Although Nationwide Van Lines alleged that it used its mark "as early as 2001," the trademark registration established that a company named National Van Lines registered its mark in 1952. And, as "[t]he owner of a registered mark, [National Van Lines] . . . enjoys the unlimited right to use the mark nationwide, and federal registration affords [it as] the registrant priority over all future users of confusingly similar marks," like Nationwide Van Lines. *See Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). So, in the words of the district court, "it cannot be case that [Nationwide Van Lines] ever had first use or priority of the mark."

4

Nationwide Van Lines argues that it was improper for the district court to consider a trademark registration that Transworld attached to its motion to dismiss. But Federal Rule of Evidence 201(b)(2) permits a district court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Taking judicial notice of a public record from the registry of the United States Patent and Trademark Office "did not transform [the] motion to dismiss into a motion for summary judgment." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006) (affirming judicial notice of records of the Securities and Exchange Commission); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277–78 (11th Cir. 1999) (same); *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The district court was entitled to take judicial notice of the federal trademark registration in resolving who owned the mark.

The district court also did not err when it ruled, in the alternative, that Nationwide Van Lines failed to allege facts that established it had a protectable interest in its mark. To avoid dismissal of the five claims it made against Transworld, Nationwide Van Lines had to prove that its mark was distinctive. *See Fla. Int'l Univ. Bd. v. Fla. Nat'l Univ.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (trademark infringement); *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d

5

1253, 1257 (11th Cir. 2015) (unfair competition, false designation of origin, and cybersquatting). "An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). There are four categories of distinctiveness: arbitrary or fanciful, which are inherently distinctive; suggestive, which also is distinctive; descriptive, which must attain a secondary meaning to become a protectable mark; and generic, which is ordinarily incapable of protection. *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522–23 (11th Cir. 1991). Because "Nationwide" describes the geographic scope of services, *see id.*, the parties agree that the mark is descriptive and is protected only if it attained a secondary meaning before its use by Transworld.

Nationwide Van Lines argues that its mark acquired distinctiveness by virtue of its registration. Although federal registration of a mark creates a presumption that the mark is distinctive, 15 U.S.C. § 1052(f), that presumption attaches "only as of the date of registration." 2 J. McCarthy, Trademarks and Unfair Competition § 15:34 (5th ed. Mar. 2021 update). So "[i]f the alleged infringement began before the mark was registered, then a . . . registration does not create a presumption of secondary meaning dating back to before the mark was registered." *Id.*

6

The allegations made by Nationwide Van Lines in its complaint and the contents of its attachments, which we accept as true, *see Fourth Est.*, 856 F.3d at 1339, fail to create a plausible inference that its service mark acquired distinctiveness before use by Transworld. Nationwide Van Lines alleged that it began using its mark "as early as June 27, 2001," and it attached to its complaint a certificate of registration that issued on August 14, 2018, for its mark. During that interim, according to the company, its competitor used an allegedly infringing mark. Nationwide Van Lines alleged that Transworld began "using the name and mark NATIONWIDE MOVERS . . . approximately nine (9) years after Plaintiff commenced use[]" of its mark, or around 2010. But because Nationwide Van Lines registered its mark about eight years *after* Transworld used its allegedly infringing mark, the federal registration did not create a presumption of secondary meaning.

Nationwide Van Lines also alleged no facts that would establish a plausible inference that its mark acquired a secondary meaning before its use by Transworld. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007). "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* (internal quotation marks omitted and alteration adopted). There are four factors to consider in determining whether a mark has acquired a secondary meaning: the length and manner of the mark's use; the nature and extent of advertising and promotion; the

7

efforts of the business to create in the public's mind an association between the mark and the business; and "the extent to which the public actually identifies the name" with the business. *Investacorp*, 931 F.3d at 1525. The last factor is the "most telling." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Most of the allegations in the complaint that relate to secondary meaning are conclusory. *See Iqbal*, 556 U.S. at 680–81. For example, the complaint alleged, without elaboration, that Nationwide Van Lines "dedicated significant resources to develop its brand and the NATIONWIDE Mark" and "spent significant sums to advertise and promote moving services under the NATIONWIDE Mark" and that its mark "became extremely well-known among consumers throughout the United States" and "acquired distinctiveness and secondary meaning since prior to the commencement of any of the Defendants' use of any of the subject marks." The complaint also alleged that Nationwide Van Lines "displays the NATIONWIDE Mark in advertising and promotional materials for [its] services and on moving trucks, moving equipment, employee uniforms, boxes, and on other promotional items, [it] used and transported in interstate commerce," but it alleged no facts about the extent of its advertising and promotion or about the extent to which the public identifies the mark with Nationwide Van Lines.

The district court did not err. The existence of a protectable interest in a trade name is an element of every claim made against Transworld. Nationwide Van

8

Lines was not the first user of nor did it have priority in its mark. And because the company failed to plausibly state that its mark was distinctive, as required to state a claim of cybersquatting, we need not address whether it also failed to allege facts that would permit an inference that Transworld acted in bad faith.

We **AFFIRM** the dismissal of the second amended complaint of Nationwide Van Lines.